## APPEAL OF NEWMARKET CO.

Docket No. 1489. Submitted July 25, 1925. Decided September 8, 1925.

Value of leasehold determined for purpose of invested capital and exhaustion.

*Wilbur D. Finch, Esq.*, and *William Dolge, C. P. A.*, for the taxpayer.

*Ward Loveless, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency of $1,473.16 income and profits taxes for 1919 and 1920.

### FINDINGS OF FACT.

On or about July 2, 1909, Richard H. Jeffries and John C. Lenk caused the taxpayer corporation to be organized under the laws of the State of California, with an authorized capital stock of 50,000 shares of the par value of $1 each. Jeffries and Lenk each subscribed for $25,000 par value of the capital stock. No regular books of account were opened until January 1, 1911, at which time Jeffries and Lenk were charged on the books of the company with the amount of their subscriptions less the profits made by the company up to that date. On January 1, 1911, this error in opening the books was corrected by crediting profit and loss with the profits earned to January 1, 1911, and charging the subscription account of Jeffries and Lenk with that amount, making the total charged against Jeffries and Lenk for the capital stock $50,000.

On January 1, 1912, Jeffries and Lenk, as lessees, entered into a lease with one Curtin, as lessor, covering property in the business district of Los Angeles. The lease was for a period of 25 years from January 1, 1912, at a rental of $1,080 monthly. From the date of the execution of this lease to August, 1913, Jeffries and Lenk paid the rental and received all the income from the premises. The lease was entered into by Jeffries and Lenk as a private speculation, and the Newmarket Co. had no interest therein.

In or about the month of March, 1913, an arrangement was entered into between the taxpayer and Jeffries and Lenk under which the Newmarket Co. was to try out the premises as a suitable location for its market. The company was to pay the rental from the date it occupied the premises and to receive the income from the portion of the premises which it did not itself occupy. If the location proved satisfactory, it was to have the right to take over the lease at a valuation to be agreed upon. At that time Jeffries and Lenk

were the owners of all of the capital stock of the corporation, with the exception of 1,000 shares held by an employee. Under this arrangement the taxpayer entered into possession of a part of the property on July 4, 1913, and thereafter paid the rent to the landlord and received rent from the tenants occupying the remainder of the leased premises.

On March 29, 1915, the board of directors of the taxpayer consisting of Jeffries, Lenk, and Berkely, an employee, held a meeting at which a resolution was adopted authorizing the taxpayer to purchase the lease on this property, and directing that Jeffries and Lenk be credited with $50,000 in full settlement of their stock subscription. On that day a formal assignment of the lease from Jeffries and Lenk to the taxpayer was executed and delivered. On March 30, 1915, an entry was made on the books of the taxpayer showing the acquisition of the leasehold by the corporation at $50,000, and a credit to the stock subscription account of Jeffries and Lenk of $50,000.

In filing its income and profits-tax returns for 1919 and 1920, taxpayer included in its invested capital $50,000 as paid in for capital stock and deducted exhaustion of the lease upon a cost of $50,000. The Commissioner refused to include such sum of $50,000 in taxpayer's invested capital or to allow exhaustion on the lease on the ground that no proof of value of $50,000 had been shown.

On March 29, 1915, the lease so assigned to the taxpayer had an actual cash value in excess of $50,000.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 20 days' notice, in accordance with Rule 50.

### OPINION.

PHILLIPS: The sole question involved in this appeal is the value of the leasehold interest transferred to the taxpayer on March 29, 1915, in settlement of the subscriptions to its capital stock in the sum of $50,000. The testimony given by two qualified real estate dealers specializing in property in this vicinity was to the effect that the leasehold was reasonably worth from $70,000 to $95,000 in cash on the date in question. After carefully considering this testimony and giving due consideration to the contention of the Commissioner that a part of the value of the leasehold on March 29, 1915, was the result of improvements or alterations made in the leased premises by the taxpayer for the purpose of its own business, we conclude that the lease on March 29, 1915, had an actual cash value of at

least $50,000, and that the taxpayer is entitled to include such amount in its invested capital. During the years in question the taxpayer should also be allowed to deduct exhaustion upon the leasehold on the basis of a cost of $50,000 to be prorated over the life of the lease from March 29, 1915. In computing invested capital for the years in question the surplus of the taxpayer should be reduced by the amount of exhaustion sustained upon the leasehold in prior years.

ARUNDELL not participating.